Richard E. Donahoo, State Bar No. 186957
Sarah L. Kokonas, State Bar No. 262875
Judith L. Camilleri, State Bar No. 282503
**DONAHOO & ASSOCIATES**
440 West First Street, Suite 101
Tustin, CA 92780
Telephone: (714) 953-1010
Facsimile: (714) 953-1777
Email: rdonahoo@donahoo.com
      skokonas@donahoo.com
      jcamilleri@donahoo.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| JORGE DELL'AQUILA and CARRIE ULLMER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.; VOLKSWAGEN OF AMERICA, INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:<br><br>Judge:<br><br>Dept.:<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF:**<br><br>1. Fraud;<br>2. Negligent Misrepresentation;<br>3. Unfair Competition (Bus. & Prof. Code §17200];<br>4. Negligence;<br>5. Breach of Implied Warranty of Merchantability;<br>6. Breach of Express Warranty of Merchantability;<br>7. Magnuson Moss Warranty Act, (15 U.S.C. § 2301 et seq.);<br>8. Unjust Enrichment;<br>9. Violation of California Consumers Legal Remedies Act(Cal. Civ. Code §§ 1750, et seq.)<br>10. Breach of Implied Warranty of Merchantability (Cal. Com. Code § 2314)<br>11. Violation of Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability (Cal. Civ. Code §§ 1791.1 & 1792)<br><br>**JURY TRIAL DEMANDED** |

# I. INTRODUCTION

COME NOW, Plaintiffs Jorge Dell A'quila and Carrie Ullmer ("Plaintiffs"), on behalf of themselves and all others similarly situated, who complain against Defendants VOLKSWAGEN GROUP OF AMERICA, INC., AND VOLKSWAGEN OF AMERICA, INC. (collectively "Defendants" or "Volkswagen") and DOES 1 through 10, and each of them, under information and belief, as follows:

## II. NATURE OF THE ACTION

1.  Plaintiffs bring this class action on behalf of themselves and all other owners, wherever situated in the United States, of certain diesel vehicles manufactured by Volkswagen for model years 2009-2015 ("Claims Period"). The Subject Vehicles consist of approximately 482,000 diesel Volkswagen and Audi vehicles manufactured and sold and or leased in the United States since 2009.

2.  During the Claims Period Defendants manufactured and designed a system to circumvent United States emission standards. Plaintiffs allege under information and belief that Defendants did so because Defendants were unable comply with federal and state emissions standards and meet the standards of their advertising and marketing for their "clean" and "high performing" passenger vehicles. Defendants' advertising was false and misleading and designed to deceive. Under information and belief, Defendants knew that to comply with the emission standards would mean that Defendants' products would underperform when compared to competing passenger vehicles.

3.  In 2007 the U.S. announced tougher curbs on the emission of nitrogen oxide (NOx), and VW suspended sales of its diesel cars in the U.S. But Volkswagen had a solution. According to press reports, in Volkswagen's June, 2007 "Powertrain and Fuel Strategy," Volkswagen said independence from fossil fuels lay at the end of the industry's evolutionary path, but existing technology would still dominate, so VW would concentrate on developing it to fit new standards. "New powertrains, including an engine concept developed for use in the USA, under the working title 'BlueTDI,' are already in the prototype stage," the document said. "These engines will fulfill the toughest

emissions laws in the world - even the so-called 'Tier2 Bin5' in California, one of the most stringent emissions standards in the world." Volkswagen began marketing the Subject Vehicles with high fuel efficiency and performance, with low emissions, surpassing comparable competing gasoline powered vehicles.

4. But Volkswagen's public statements and marketing were untrue. Volkswagen's solution to sell more diesel vehicles in the U.S. was to include software in the Subject Vehicles that would circumvent EPA emission standards for certain air pollutants. The software was a "defeat device" that was manufactured to evade Clean Air Act standards. Using a sophisticated software algorithm on the Subject Vehicles, Defendants programmed the vehicles to detect when the cars were undergoing official emissions testing and to turn full emissions controls on only during the test. According to an investigation by the Environmental Protection Agency ("EPA"), the effectiveness of the vehicle's pollution emissions control devices is greatly reduced during all normal driving conditions resulting in cars that meet emissions standards in laboratory or testing stations, but do not during normal operations, and emit NOx at up to forty times the standards. According to the EPA, the software produced by Volkswagen is a "defeat device," as defined by the Clean Air Act.

5. The conduct included not only deceiving unsuspecting car buyers, but lying to federal investigators. According to press reports, for nearly a year, Volkswagen officials engaged in a cover up, lying to the EPA alleging that discrepancies between the formal air-quality tests on its diesel cars and the much higher pollution levels out on the road were the result of technical errors, not a deliberate attempt to deceive.

6. In early September, 2015 Defendant Volkswagen admitted to the EPA that the diesel vehicles it sold in the United States had software deliberately designed to cheat on emissions tests. As reported in the press, "The company was evidently concerned that actually meeting the federal emissions standards would degrade the power of the engines, which it marketed as comparable in performance to gasoline engines. Meeting the

standard would also undercut the fuel efficiency that is one of the main selling points of diesels."

7.     Purchasers of the Subject Vehicles with the "defeat device" had no knowledge of the defect or the deception.  News of the fraud broke Friday, September 18, 2015, when the EPA issued a Notice of Violation and the State of California Air Resources Board ("CARB") released a letter to Defendants.  Copies of the EPA notice and the CARB letter are attached this Class Action Complaint as Exhibits A and B, respectively.  As a result, on September 21, 2015, Volkswagen's chief executive issued an "apology" and the company says it will not sell its 2015 and 2016 diesel cars in the United States.  The company is recalling the Subject Vehicles.

8.     According to the U.S. EPA, Volkswagen installed its "defeat device" in the in at least the following diesel models of its passenger vehicles: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3 (collectively "the Subject Vehicles").  By this action Plaintiffs seek recovery for all U.S. purchasers of diesel passenger vehicles during the Claims Period whether currently identified by the EPA or not.  As reported in the EPA's press release, the California Air Resources Board has a current ongoing investigation examining, among other things, whether the Defendants installed "defeat devices" in other models during the Claims Period.  Plaintiffs reserve the right to amend this complaint as such facts are discovered.

### III. PARTIES

9.     Plaintiff Jorge Dell'Aquila is resident and citizen of Orange County, California. Plaintiff Carrie Ullmer is a resident and citizen of Orange County, California.

10.    Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in each state in the United States (including California) and the District of Columbia.  It is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171.  Volkswagen is a citizen of New Jersey and Virginia under 28 U.S.C. § 1332(d)(10).

11.     Volkswagen of America, Inc. ("Volkswagen") is likewise a corporation organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171.  Volkswagen is therefore a citizen of New Jersey and Virginia.

12.     At all relevant times, Volkswagen designed, tested, manufactured, distributed, marketed, advertised, sold, leased, and warranted the Subject Vehicles under the Volkswagen and Audi brand names throughout the nation.  Volkswagen designed the engines and engine control systems in the Subject Vehicles, including the "defeat device" cited by the EPA in its investigation.  Volkswagen also drafted, developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Subject Vehicles.

13.     Plaintiffs are informed and believe, and based thereon allege, that each of the preceding Volkswagen defendants pertinent to this action acted as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants.  All acts and omissions herein complained of were performed within the course and scope of said employment, service and/or agency and with the consent of each of the Defendants mentioned herein.  All actions of each Defendant herein alleged were ratified and approved by the directors, officers and managing directors of Defendants.

## IV. JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

15.     Plaintiffs are putative class members and are of diverse citizenship from one defendant; there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

16.     This Court has personal jurisdiction over Defendants because they conduct business in California, and have sufficient minimum contacts with California.  Plaintiffs are informed and believe that Defendant Volkswagen Group of American, Inc. operates

the Volkswagen Test Center in Oxnard, California; the Volkswagen Electronic Research Laboratory in Belmont, California, the Volkswagen Parts Distribution Center in Ontario, California and the Volkswagen Design Center in Santa Monica, California.

17.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendants have caused harm to Class members residing in this District, including Plaintiffs.

## V. ANY STATUTES OF LIMITATION OR
## STATUTES OF REPOSE HAVE BEEN TOLLED

18.     Any and all applicable statutes of limitation or statutes of repose are, and have been, tolled under the doctrines of fraudulent concealment, delayed discovery, equitable estoppel and equitable tolling.

19.     Defendants designed manufactured and programmed the Subject Vehicles in a way and manner to evade detection and to turn full emissions controls on only during standard emissions test.   Plaintiffs and all class members had no knowledge, and could not have had knowledge, of the true facts related to the design and manufacturing of the Subject Vehicles.   Plaintiffs and the Class Members had no knowledge of the installation of the "defeat device" in the Subject Vehicles.   Volkswagen also drafted, developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Subject Vehicles and none contained information related to the "defeat device" installed to circumvent regulatory requirements.

20.     Through the exercise of reasonable diligence, and within any applicable statutes of limitation and statute of repose, Plaintiffs and members of the proposed Class could not have discovered that Volkswagen was concealing the "defeat devices" from prospective customers and misrepresenting the emissions and performance features of its vehicles, including but not limited to its use of defeat devices to increase performance. Defendants intentionally concealed the existence of the "defeat devices" from prospective purchasers while touting  information known to be materially  incomplete about the performance and

fuel efficiency of these vehicles. Defendants intended to create a market for their vehicles by intentionally providing inaccurate and incomplete marketing information knowing that prospective purchasers would be deceived by the failure to fully disclose.

21.     The conduct to conceal the true facts included deceiving unsuspecting car buyers and federal and state regulators.  Plaintiffs are informed and believe that for nearly a year, Volkswagen officials engaged in a cover up, lying to the EPA and the State of California alleging that discrepancies between the formal air-quality tests on its diesel cars and the much higher pollution levels out on the road were the result of technical errors, not a deliberate attempt to deceive.

22.     Plaintiffs are informed and believe that Volkswagen did not admit to its fraudulent concealment until industry research groups discovered the difference between Volkswagen's emissions in testing laboratories and in normal use.   The groups brought the defeat device issue to the attention of the EPA which undertook tests on the vehicles and discovered the defeat device.

23.     Plaintiffs  and the Class members did not know of facts, nor could they have reasonably discovered facts, that would have caused a reasonable person to suspect that Volkswagen intentionally altered its vehicles with sophisticated software, and failed to report information within its knowledge to federal and state authorities, its dealerships, or consumers, all in an effort to conceal the fact that its products could not perform to the minimum required performance standards and meet environmental requirements.   A reasonable and diligent investigation by a reasonable vehicle purchase could not have disclosed that Volkswagen had designed such a system or that it knew of its deception and that it concealed that information, which was discovered by Plaintiffs  on or about September 20, 2015.   Volkswagen is estopped from relying on any statutes of limitations or statutes of repose in defense of this action.

24.     Under the doctrine of equitable tolling any applicable statute of limitation or statute of repose have been tolled to the earliest date of Defendants use of a defeat device in its diesel passenger vehicles.

# VI. DEFENDANTS' WRONGDOING AND PLAINTIFFS' DAMAGES

25.     Defendant designed, manufactured, marketed and sold defective cars could not meet minimum performance and mileage requirements without alterations to the emissions control systems and misled consumers and regulators about the performance of the vehicle, the fuel efficiency, and the emissions control.

26.     Defendants have touted performance and environmental compliance for years. This "green" strategy is seen in it marketing and press releases.   In 2013, Defendants claimed that "[m]ore than 75 percent of the diesel engines that are sold in the passenger car and SUV segments in the United States can be found under the hoods of Volkswagen models.   Ever since 1977, when Volkswagen first offered a diesel in the rabbit, the company has sold more than a million cars and SUVs powered by these engines in the U.S . . . So far in 2013, Volkswagen has sold 56,480 TDI Clean Diesel cars, representing nearly a quarter of the cars it sells.  Volkswagen offers Clean Diesel technology in seven different models, six of which get an EPA estimated fuel economy rating of 40 mpg or more on the highway. "  - Press Release August 9, 2013

27.     Further, Defendants claimed in 2013

> "The renewable diesel evaluation program is part of Volkswagen's global strategy to become one of the world's most environmentally friendly automakers by 2018. From a product perspective, the company seeks to reduce passenger fleet CO2 with a goal of cutting emissions by 90 percent by 2015, improving fuel efficiency by 10-15 percent for every new model as compared to its predecessor, and by making other significant environmental improvements for each new model that's introduced."

– Press Release June 29, 2015.

28.     Defendants claimed in 2015 that they broke a Guiness World Record, stating:

> "2015 Golf TDI Clean Diesel, part of the family of vehicles that won the 2015 North American Car of the Year, has set a new GUINESS WORLD RECORDS achievement for the "lowest fuel consumption- 48 U.S. contiguous States for a

non-hybrid car" with a remarkable 81.17 mpg.   Traveling 8,233.5 miles around America is 16 days on $294.98 of Shell Diesel fuel, the Golf beat the previous mark of 77.99 mpg by more than 3 mpg, and also beat the hybrid vehicle record of 74.34 mpg by more than 6 mpg."

– Press Release July 8, 2015.

"Covering 8,233.5 miles on just 101.43 gallons of Clean Diesel fuel is a remarkable accomplishment, and solid proof of the efficiency and fuel economy of Volkswagen's TDI Clean Diesel vehicles."

"The 2015 Golf TDI uses Volkswagen's advanced turbocharged and direct-injection Clean Diesel engine to achieve an EPA estimated highway fuel economy of 45 miles per gallon when equipped with the six-speed manual transmission."

Press Release July 8, 2015.

29.     The Volkswagen advertisement strategy was to market its diesel vehicles as low-emission, fuel-efficient cars.  As a result Volkswagen has become the largest seller of diesel passenger vehicles in the United States.  Defendant's success sought to portray the diesel cars as "clean" and "green" vehicles and to win "green" awards.

30.     On its website Volkswagen Group of America stated that it takes "environmental responsibility very seriously. When it comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."

31.     According to the September 18, 2015 EPA Notice of Violation ("NOV"). (Exhibit "A") Defendant installed sophisticated software in the Volkswagen and Audi diesel vehicles sold in the United States that detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test.  At all other times that the vehicle is running, however, the emissions controls are deactivated, meaning that pollution is freely released into the environment at levels that exceed those

allowed by federal and state clean air regulators. This software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

32.   As stated in the NOV:

Specifically, VW manufactured and installed software in the electronic control module (ECM) of these vehicles that sensed when the vehicle was being tested for compliance with EPA emission standards.   For ease of reference, the EPA is calling this the "switch."   The "switch" senses whether the vehicle is being tested or not based on various inputs including the position of the steering wheel, vehicle speed, the duration of the engine's operation, and barometric pressure.   These inputs precisely track the parameters of the federal test procedure used for emission testing for EPA certification purposes.   During EPA emission testing, the vehicles' ECM ran software which produced compliant emission results under an ECM calibration that VW referred to as the "dyno calibration" (referring to the equipment used in emissions testing, called a dynamometer).   At all other times during normal vehicle operation, the "switch" was activated and the vehicle ECM software ran a separate "road calibration" which reduced the effectiveness of the emission control system (specifically the selective catalytic reduction or the lean NOx trap).   As a result, emissions of NOx increased by a factor of 10 to 40 times above the EPA compliant levels, depending on the type of drive cycle (e.g., city, highway).

\* \* \*

VW knew or should have known that its "road calibration" and "switch" together bypass, defeat, or render inoperative elements of the vehicle design related to compliance with the CAA emission standards.   This is apparent given the design of these defeat devices.   As described above, the software was designed to track the parameters of the federal test procedure and cause emission control systems to underperform when the software determined that the vehicle was not undergoing the federal test procedure.

***

VW's "road calibration" and "switch" are AECDs that were neither described nor justified in the applicable COC applications, and are illegal defeat devices. Therefore each vehicle identified by the table below does not conform in a material respect to the vehicle specifications described in the COC application. As such, VW violated section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1), each time it sold, offered for sale, introduced into commerce, delivered for introduction into commerce, or imported (or caused any of the foregoing with respect to) one of the hundreds of thousands of new motor vehicles within these test groups. Additionally, VW violated section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), each time it manufactured and installed into these vehicles an ECM equipped with the "switch" and "road calibration."

33.     Plaintiffs and each of the members of the Class have been, and will continue to be damaged by the acts and omissions of Defendants. In order to attain the performance and mileage criteria touted by Defendants in the marketing and promotion of these vehicles, the emission systems have been altered. Upon information and belief, an EPA mandated repair to comply with the emissions standards will reduce the performance standards of the vehicles below the standards touted by the Defendants in their advertising, and promotional materials. In fact, Plaintiffs allege under information and belief, that compliance with the emissions standards will substantially degrade performance characteristics, including speed, horsepower and mileage efficiency. Moreover, upon information, there is no "fix" that will return the vehicles to the standards touted by Defendants in their advertising and promotional materials. As a result, Plaintiffs and the Class have suffered damages including but not limited to the cost to repair the Subject Vehicles to a level that is not only EPA compliant, but meets the technical performance standards advertised and marketed by Defendants. Class members have suffered actual harm and damages because their vehicles no longer perform as they did when purchased and as advertised. It is now public knowledge that the subject vehicles have emissions

deficiencies. As as result, without a proper fix, some class members will be unable to register their vehicles in certain states because the "defeat device" will be disabled by the testing agency at the time of testing in order to get an accurate pollution reading. Upon information and belief, the reading will not pass emission standards. Indeed, the EPA will not approve the sale of 2016 models of the vehicles unless and until Defendants can provide proof of compliance with EPA standard when the defeat device is turned off.

34.    In addition, Plaintiffs and the class have suffered a diminution in value of the Subject Vehicles, not only from the cost to repair the vehicles but the "stigma" damages that are, and will continue to be associated with the Subject Vehicles, whether or not a recall is successful in making the vehicles EPA compliant.   In addition to the extent that the vehicles no longer performed as mileage efficient as sold, Plaintiffs and the Class will suffer continual damages in increased fuel costs.

## VII. PLAINTIFFS' FACTS

35.    Plaintiff Jorge Dell'Aquila of Irvine, California, purchased a 2013 Volkswagen Golf TDI 4-door sedan from the Puente Hills Volkswagen, in Puente Hills Volkswagen on or about June 25, 2013, spending over $26,000.

36.    Plaintiff Dell'Aquila viewed marketing and advertising about the vehicle before deciding to purchase the diesel vehicle.   Plaintiff Dell'Aquila read and review information from Volkswagen's website that described the vehicle's fuel efficiency and "clean" diesel engine.   Plaintiff relied on the representations of Volkswagen on numerous types of written representations, including but not limited to the vehicle sticker and mileage representations to make a decision to purchase the vehicle.  Plaintiff relied on Defendant's written advertising and statements that the diesel Subject Vehicle was a clean, low-emission vehicle, with a long useful life.   Plaintiff understood and assumed that the vehicle was compliant with all emission standards and that its performance would not be impacted whatsoever by the compliance with emission requirements.   Had Plaintiff known the true facts,   including that the way Volkswagen achieved the

performance and mileage criteria was to cheat on the emissions system by installation of "defeat devices" he would not have purchased the vehicle.

37.    Plaintiff Carrie Ullmer of San Clemente, California, purchased a 2014 Volkswagen Jetta TDI from Capistrano Volkswagen, in San Juan Capistrano, California on or about April 20, 2014.

38.    Plaintiff Ullmer viewed marketing and advertising about the vehicle before deciding to purchase the diesel vehicle.  Plaintiff Ullmer read and review information from Volkswagen's website that described the vehicle's features, including fuel efficiency and "clean" diesel engine.   Plaintiffs relied on the "clean" representations of Volkswagen on numerous types of written representations, including but not limited to the internet and mileage representations on the vehicle sticker to make a decision to purchase the vehicle.   Plaintiff relied on Defendant's written advertising, radio advertising and statements that the diesel Subject Vehicle was a clean, low-emission vehicle, with a long useful life.   Plaintiff understood and assumed that the vehicle was compliant with all emission standards and that its performance would not be impacted whatsoever by the compliance with emission requirements.  Had Plaintiff known the true facts, including that the way Volkswagen achieved the performance and mileage criteria was to cheat on the emissions system by installation of "defeat devices" she would not have purchased the vehicle.

## VIII. CLASS ACTION ALLEGATIONS

39.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who are current or former owners and/or lessees of a "Subject Vehicle" including, without limitation: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3. ("the Class")

40.     As a subclass, Plaintiffs bring this on behalf of all California members of the Class. ("California Subclass")

41.     Excluded from the Class are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family and any personal injury claims.  Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

42.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

43.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

44.     Numerosity- The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiffs are informed and believe that there are not less than hundreds of thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Volkswagen's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

45.     Commonality and Predominance- This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)     Whether Volkswagen is subject to federal laws regulating U.S. auto manufacturers;

(b)     Whether Volkswagen was subject to the investigation of the EPA and the State of California regarding the Subject Vehicles;

(c)     Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Subject Vehicles into the stream of commerce in the United States;

(d)     Whether advertising and marketing of the Subject Vehicles during the relevant Claims Period was misleading;

(e)     Whether the CleanDiesel engine system in the Subject Vehicles contains a defect in that it does not comply with EPA requirements;

(f)     Whether compliance with federal and state EPA requirements degrading the performance and/or efficiency of the Subject Vehicles;

(g)     Whether Volkswagen designed and installed a "defeat device" in the Subject Vehicles

(h)     Whether Volkswagen knowingly designed, manufactured, marketed, and distributed vehicles with a "defeat device";

(i)     Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

(j)     Whether Plaintiffs and the other Class members have suffered cognizable damage;

(k) Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

(l) Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount

46.     Typicality- The claims of the named Plaintiffs are typical of the claims of the class.  Plaintiff and all members of the class sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of laws regulations that have the force and effect of law and statutes as alleged herein.  Plaintiffs' claims are based on the same legal theories as the claims of the unnamed members of the class.  The legal issues and laws alleged to be violated by such conduct apply equally to Plaintiffs and all class members.   All Class members were comparably injured through Volkswagen's wrongful conduct as described above.

47.     Adequacy- Plaintiffs will fairly and adequately represent and protect the interests of the members of the class.   Counsel who represents Plaintiffs are competent and

experienced in litigating class actions.   Plaintiffs' interests do not conflict with the interests of the other members of the Class.

48.     Declaratory and Injunctive Relief-Volkswagen has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

49.     Superiority-A class action is superior to other available means for the fair and efficient adjudication of this controversy.   Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.   Each member of the class has been damaged and is entitled to recovery by reason of defendants' illegal policy and/or practice.

50.     Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.   Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## IX. FIRST CLAIM FOR RELIEF

### Fraud by Concealment (Common Law)

### By Plaintiffs For Themselves and the Class

### As Against Defendants and DOES 1 - 10

51.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

52.     Volkswagen intentionally concealed and suppressed material facts concerning the quality and character of the Subject Vehicles. As alleged in this Complaint, Volkswagen engaged in deception to mislead consumers regarding the performance of the Subject Vehicles and the vehicles' compliance with federal and state vehicle emissions standards. Defendants concealed the vehicle deficiencies by installing software designed to only permit the emissions control systems to engage during emission tests, and intentionally

programed the vehicle so that at all times of operation it would not operate within compliance with the emissions standards.

53.     Each vehicle was installed with a "defeat device" designed to switch on the emission compliance systems only during emissions certification testing, such that the vehicles would operate differently and emit far lower emissions than when actually operating on the road.   As a result, Plaintiffs are informed and believe that the vehicles operated at a higher standard during normal operations than would otherwise be if the vehicle was EPA compliant.   Instead, the Subject Vehicles passed emissions certifications by way of deliberately induced false readings.   According to the EPA NOV (Exhibit A) Volkswagen's wrongful conduct resulted in emissions from these vehicles at 40 times the applicable standards.

54.     Plaintiffs and the Class members reasonably relied upon Volkswagen's false representations.   Plaintiffs and the Class did not know and had no way of knowing that Volkswagen's representations were false and misleading.   Volkswagen knowingly engaged in fraudulent concealment and employed a method of deception. Plaintiffs and Class members did not, and could not, discover Volkswagen's wrongdoing.

55.     Volkswagen's representations which were material to consumers, both because they concerned the quality of the Subject Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. Volkswagen knew that its customers, including Plaintiffs  and Class members valued that the vehicles they were purchasing or leasing were clean diesel cars, in compliance will all state and federal mandates and they paid accordingly.

56.     Volkswagen knew the facts were unknown to or reasonably discoverable by Plaintiffs or Class members.

57.     Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to performance and emissions standards, starting with references to them as clean diesel cars, or cars with

clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions deception, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.

58.     Volkswagen failed to disclose that its diesel vehicles, including the Subject Vehicles could not achieve and maintain their expected performance criteria and be compliant with the federal and state emissions requirements.

59.     Having volunteered to provide information to Plaintiffs and the Class, Volkswagen had the duty to disclose the entire truth. These omitted and concealed facts were material because they directly affect the value of the Subject Vehicles purchased or leased by Plaintiffs and Class members.  The fact that a manufacturer's product will performed to their expected criteria only when not forced to comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiffs and Class members that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had thoroughly subverted the testing process.

60.     Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to increase sales and profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

61.     Upon investigation by federal and state officials, Defendants lied and mislead the government regulators for at least 1 year.

62.     On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing

material information regarding the emissions qualities of its referenced vehicles and its emissions deception.

63.     Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

64.     Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damages because they own vehicles which will require a cost to repair to bring the vehicles to emissions and performance requirements.  In addition to the cost of repair is that the vehicles are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' performance and emissions standards and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and Class members been aware of Volkswagen's emissions deceptions with regard to the vehicles at issue, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

65.     The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Subject Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

66.     Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial. As necessary, and in the alternative, Plaintiffs may allege sub-classes, based on the residences at pertinent times of members of the Class, to allege fraudulent concealment under the particular laws of those states.

67.     Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## X. SECOND CLAIM FOR RELIEF

### Negligent Misrepresentation (Common Law)

### By Plaintiffs For Themselves and the Class

### As Against Defendants and DOES 1 - 10

68.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

69.     Volkswagen negligently failed to disclose material facts concerning the quality, performance and compliance of the Subject Vehicles. As alleged in this Complaint, Volkswagen misled consumers regarding the performance of the Subject Vehicles and the vehicle's compliance with federal and state vehicle emissions standards.  Defendants failed to disclose the vehicle deficiencies by installing software designed to only permit the emissions control systems to engage during emission tests, and negligently programed the vehicle so that at all times of operation it would not operate within compliance with the emissions standards..

70.     Each vehicle was installed with a "defeat device" designed to switch on the emission compliance systems only during emissions certification testing, such that the vehicles would operate differently and emit far lower emissions than when actually operating on the road.   As a result the vehicles operated at a higher standard than would

otherwise be if the vehicle was EPA compliant.  Instead, the Subject Vehicles passed emissions certifications by way of deliberately induced false readings.   According to the EPA NOV (Exhibit A) Volkswagen's wrongful conduct resulted in emissions from these vehicles at 40 times the applicable standards.

71.   Plaintiffs  and  the  Class  members  reasonably  relied  upon  Volkswagen's representations that the vehicles were compliant with U.S. laws  Plaintiffs and the Class did not know and had no way of knowing that Volkswagen's representations were false and misleading.  Volkswagen negligently failed to disclose. Plaintiffs and Class members did not, and could not, discover Volkswagen's wrongdoing.

72.   Plaintiffs justifiable relied on Volkswagen's representations which were material to consumers, both because they concerned the quality of the Subject Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.   Volkswagen knew that its customers, including Plaintiffs and Class members valued that the vehicles they were purchasing or leasing were clean diesel cars, in compliance will all state and federal mandates and they paid accordingly.

73.   Volkswagen knew the facts were unknown to or reasonably discoverable by Plaintiffs or Class members.

74.   Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to performance and emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions deception, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.

75.   Volkswagen failed to disclose that its diesel vehicles, including the Subject Vehicles could not achieve and maintain their expected performance criteria and be compliant with the federal and state emissions requirements.

76.   Having volunteered to provide information to Plaintiffs and the Class, Volkswagen had the duty to disclose the entire truth. These omitted and concealed facts were material because they directly affect the value of the Subject Vehicles purchased or leased by Plaintiffs and Class members.  The fact that a manufacturer's product will performed to their expected criteria only when not forced to comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiffs and Class members that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had thoroughly subverted the testing process

77.   Volkswagen negligently omitted and/or suppressed these material facts, in whole or in part, to increase sales and profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

78.   Upon investigation by federal and state officials, Defendants misled government regulators for at least 1 year.

79.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were

justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

80.    Because of the negligent concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damages because they own vehicles which will require a cost to repair to bring the vehicles to emissions and performance requirements. In addition to the cost of repair is that the vehicles are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' performance and emissions standards and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and Class members been aware of Volkswagen's emissions deceptions with regard to the vehicles at issue, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

81.    The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Subject Vehicles, let alone pay what otherwise would have been fair market value for the vehicles. Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

## XI. THIRD CLAIM FOR RELIEF
## UNFAIR COMPETITION
## BUSINESS & PROFESSIONS CODE §17200 et seq.
### By Plaintiffs For Themselves and the Class
### Against Defendant and DOES 1 through 10

82.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

83.     Plaintiffs on behalf of themselves, the general public, and on behalf of others similarly situated, bring this claim pursuant to Business & Professions Code §17200, et seq. The conduct of all Defendants as alleged in this Complaint has been and continues to be unfair, unlawful, and harmful to Plaintiffs, the general public, and the Class. Plaintiffs seek to enforce important rights affecting the public interest within the meaning of C.C.P. §1021.5.

84.     Plaintiffs are "persons" within the meaning of Business & Professions Code §17204, and therefore have standing to bring this cause of action for injunctive relief, restitution, and other appropriate equitable relief.

85.     Business & Profession Code §17200, et seq. prohibits unlawful and unfair business practices.  Consumer protections and emissions regulations express fundamental public policies.  Defendants' conduct, as alleged hereinabove, constitutes unfair competition in violation of §17200 et. seq. of the Business & Professions Code.

86.     Defendants by engaging in the conduct herein alleged either knew or in the exercise of reasonable care should have known that the conduct was unlawful.  As such it is a violation of §17200 et. seq. of the Business & Professions Code.

87.     As a proximate result of the above mentioned acts of Defendants, Plaintiffs and others similarly situated and the general public have been damaged in a sum as may be proven.

88.     Unless restrained by this Court, Defendants will continue to engage in the unlawful conduct as alleged above.  Pursuant to Business & Professions Code this Court should make such orders or judgments, including the appointment of a Receiver, as may be necessary to prevent the use or employment, by Defendants, their agents or employees, of any unlawful or deceptive practice prohibited by the Business & Professions Code, and/or, including but not limited to, disgorgement of profits which may be necessary to restore Plaintiffs and the Class to the money lost be Defendants wrongful conduct.

## XII. FOURTH CLAIM FOR RELIEF
## NEGLIGENCE

**By Plaintiffs For Themselves and the Class**

**Against Defendant and DOES 1 through 10**

89.   Plaintiffs incorporate herein by reference, as though fully set forth at length, each and every allegation and statement contained in the foregoing paragraphs.

90.   At all times herein relevant, Defendants were and are engaged in the business of, including but not limited to, selling, designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, servicing, repairing, maintaining, marketing, leasing, renting, vending, installing, handling, labeling, promoting, advertising, furnishing, retailing, analyzing, inspecting, supplying, warnings and placing into the stream of commerce the Subject Vehicles.

91.   Defendants, including their employees, agents, directors, officers, stockholders, partners and associates, had a legal duty to conform their conduct in accordance with the law and that of a reasonable person, which includes adequately and properly managing and operating their business and their manufacturing, design, warning, distribution, and retail operations; adequately and properly training and supervising their employees and agents, including their designers, inspectors, quality control agents and other manufacturing, testing, distribution and delivery personnel; properly designing, manufacturing, warnings, inspecting, servicing, and distributing the Subject Vehicles; and acting without negligence, conscious disregard, despicable or other wrongful conduct.

92.   Defendants, including their employees, agents, directors, officers, stockholders, partners and associates knew or should have known that the Subject Vehicles was defectively designed.

93.   Defendants, including their employees, agents, directors, officers, stockholders, partners and associates knew or should have known that the Subject Vehicles was defectively designed and/or manufactured and failed to meet minimum regulatory requirements.

CLASS ACTION COMPLAINT

94.     Defendants, including their employees, agents, directors, officers, stockholders, partners and associates, failed to exercise ordinary care and breached their duty by, among other things:

a.      Failure to use due care in the manufacture, distribution, design, sale, marketing testing, and servicing of the Subject Vehicles and their component parts;

b.      Failure to provide adequate warning of the defects; and,

c.      Were otherwise careless or negligent.

95.     As a direct and proximate result of defects in the Subject Vehicles and the wrongful conduct, acts, omissions, and fraudulent misrepresentations of Defendants, Plaintiffs suffered damages as alleged herein.

96.     Plaintiffs are entitled to damages in an amount to be proven at trial, together with interest thereon and costs.

## XIII. FIFTH CLAIM FOR RELIEF

### Breach of Implied Warranty of Merchantability

### By Plaintiffs For Themselves and the Class

### Against Defendant and DOES 1 through 10

97.     Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

98.     Prior to the time of the subject incident, the Defendants impliedly warranted to members of the general public, including Plaintiffs, that the Subject Vehicles were of merchantable quality.

99.     Members of the consuming public, including consumers such as Plaintiffs were intended third-party beneficiaries of the implied warranty of merchantability.

100.    Plaintiffs relied on the skill and judgment of Defendants in the selection, purchase and use of the Subject Vehicles as a safe and reliable means for transportation.

101.    The Subject Vehicles were not of merchantable quality as warranted by Defendants, in that it was defectively designed and manufactured as previously alleged.

102.   Upon notice of the damages as complained of herein, notice was given by Plaintiffs to Defendants by filing this lawsuit in the time and in the manner and in the form prescribed by law, of the breach of said implied warranty.

103.   As a legal and proximate result of the breach of said implied warranty, Plaintiffs sustained the damages herein set forth.

104.   Plaintiffs are entitled to damages in an amount to be proven at trial, together with interest thereon and costs.

## XIV. SIXTH CLAIM FOR RELIEF

### Breach of Express Warranty of Merchantability

### By Plaintiffs For Themselves and the Class

### Against Defendant and DOES 1 through 10

105.   Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

106.   Defendant made numerous representations, descriptions, and promises to Plaintiffs and Class members regarding the performance and emission controls of its diesel vehicles.

107.   Defendant, however, knew or should have known that its representations, descriptions, and promises were false. Defendant was aware that it had installed defeat devices in the vehicles it sold to Plaintiffs and Class members.

108.   Plaintiffs and Class members reasonably relied on Volkswagen's representations in purchasing "clean" diesel vehicles. Those vehicles, however, did not perform as was warranted. Unbeknownst to Plaintiffs, those vehicles included devices that caused their emission reduction systems to perform at levels worse than advertised. Those devices are defects. Accordingly, Volkswagen breached its express warranty by providing a product containing defects that were never disclosed to the Plaintiffs and Class members.

109.   As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiffs and Class members suffered significant damages and seek the relief described herein.

# XV. SEVENTH CLAIM FOR RELIEF

## Magnuson Moss Warranty Act, (15 U.S.C. § 2301 et seq.)

## By Plaintiffs For Themselves and the Class

## Against Defendant and DOES 1 through 10

110.   Plaintiffs incorporate herein by reference, as though fully set forth at length, each and every allegation and statement contained in the foregoing paragraphs.

111.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301, et seq. by virtue of 15 U.S.C. §2310(d).

112.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

113.   Volkswagen is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

114.   The Subject Vehicles, and each of them, is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

115.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

116.   Volkswagen's implied warranties are covered under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

117.   Volkswagen breached these implied warranties by, among other things, providing the Subject Vehicles: a) that was not of merchantable quality; b) that presented an unreasonable risk of unintended acceleration; c) that was not fit for the ordinary purpose for which vehicles are used; and, d) that was not fully operational, safe, or reliable.

118.   Privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Volkswagen and its dealers; specifically, they are the intended beneficiaries of Volkswagen's implied warranties.  The dealer was not intended to be the ultimate consumer of, nor a passenger in, the Subject Vehicles and has no rights under the warranty agreements provided with the Subject Vehicles; the warranty

1  agreements were designed for and intended to benefit the ultimate consumers and
2  passengers only.

3  119.   Requiring an informal dispute settlement procedure, or affording Volkswagen a
4  reasonable opportunity to cure its breach of warranties, would be unnecessary and futile.
5  At the time of sale or lease of the Subject Vehicles, Defendants knew, should have
6  known, or were reckless in not knowing, of its misrepresentations concerning the Subject
7  Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation
8  and/or disclose the defective deign.   Under the circumstances, the remedies available
9  under any informal settlement procedure would be inadequate and any requirement –
10  whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiffs resort to
11  an informal dispute resolution procedure and/or afford Volkswagen a reasonable
12  opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

13  120.   As a result of Volkswagen's breach of implied warranties, Plaintiffs suffered
14  economic losses, including cost of repair, diminution in value and other economic
15  damages and losses.

16  121.   Plaintiffs are entitled to damages in an amount to be proven at trial, together with
17  interest thereon and costs.

18                          **XVI. EIGHTH CLAIM FOR RELIEF**
19                                  **Unjust Enrichment**
20                   **By Plaintiffs For Themselves and the Class**
21                   **Against Defendant and DOES 1 through 10**

22  122.   Plaintiffs incorporate by reference each and every prior and subsequent allegation
23  of this Complaint as if fully restated here.

24  123.   Plaintiffs and members of the Class conferred a benefit on Defendant by, inter alia,
25  using (and paying for) its vehicles.

26  124.   Defendant has retained this benefit, and know of and appreciate this benefit.

27  125.   Defendant was and continues to be unjustly enriched at the expense of Plaintiffs
28  and Class members.

126.   Defendant should be required to disgorge this unjust enrichment.

## XVII. NINTH CLAIM FOR RELIEF

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, et seq.)

### By Plaintiffs For Themselves and the California Subclass

### Against Defendant and DOES 1 through 10

127.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

128.   Plaintiffs bring this Count on behalf of California members of the Class.

129.   California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq., proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

130.   The Subject Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

131.   Plaintiffs and the other California members of the Class are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the other California members of the Class, and Volkswagen are "persons" as defined in Cal. Civ. Code § 1761(c).

132.   As alleged above, Volkswagen made numerous representations concerning the benefits, efficiency, performance and safety features of CleanDiesel engine systems that were misleading.

133.   In purchasing or leasing the Subject Vehicles, Plaintiffs and the other Class members were deceived by Volkswagen's failure to disclose that the Subject Vehicles were equipped with defective CleanDiesel engine systems that failed EPA and California emissions standards.

134.   Volkswagen's conduct, as described hereinabove, was and is in violation of the CLRA. Volkswagen's conduct violates at least the following enumerated CLRA provisions:

(a) Cal. Civ. Code § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

(b) Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

(c) Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

(d) Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

135. Plaintiffs and the other California members of the Class have suffered injury in fact and actual damages resulting from Volkswagen's material omissions and misrepresentations because they paid an inflated purchase or lease price for the Subject Vehicles and because they stand to pay additional fuel costs if and when their Subject Vehicles are made to comply with emissions standards.

136. Volkswagen knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the CleanDiesel engine systems, and that the Subject Vehicles were not suitable for their intended use.

137. The facts concealed and omitted by Volkswagen to Plaintiffs and the other California members of the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Subject Vehicles or pay a lower price. Had Plaintiffs and the other California members of the Class known about the defective nature of the Subject Vehicles, they would not have purchased or leased the Subject Vehicles or would not have paid the prices they paid.

138. Plaintiffs has provided Volkswagen with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a). Notice was transmitted to Volkswagen on September 21, 2015.

139. Plaintiffs' and the other California members of the Class' injuries were proximately caused by Volkswagen's fraudulent and deceptive business practices.

140.   Therefore, Plaintiffs and the other California members of the Class are entitled to equitable and monetary relief under the CLRA.

## XVIII. TENTH CLAIM FOR RELIEF

### Breach of Implied Warranty of Merchantability (Cal. Com. Code § 2314)

### By Plaintiffs For Themselves and the California Subclass

### Against Defendant and DOES 1 through 10

141.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.   Plaintiffs bring this Count on behalf of the California members of the Class.

142.   Volkswagen is and was at all relevant times a merchant with respect to motor vehicles under Cal. Com. Code § 2104.

143.   A warranty that the Subject Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

144.   These Subject Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Subject Vehicles are inherently defective in that they do not comply with federal and state emissions standards, rendering certain safety and emissions functions inoperative;   and   the   CleanDiesel   engine   system   was   not   adequately   designed, manufactured, and tested.

145.   Volkswagen was provided notice of these issues by the investigations of the EPA and individual state regulators.

146.   Plaintiffs and the other Class members have had sufficient direct dealings with either Volkswagen or their agents (dealerships) to establish privity of contract between Plaintiffs and the other Class members. Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between Volkswagen and its dealers; specifically, they are the intended beneficiaries of Volkswagen's implied warranties. The dealers were not intended to be the ultimate consumers of the Subject Vehicles and have no rights under

the warranty agreements provided with the Subject Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and the other Class members' Subject Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

147. As a direct and proximate result of Volkswagen's breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## XIX. ELEVENTH CLAIM FOR RELIEF

### Violation of Song-Beverly Consumer Warranty Act for

### Breach of Implied Warranty of Merchantability (Cal. Civ. Code §§ 1791.1 & 1792)

### By Plaintiffs For Themselves and the California Subclass

### Against Defendant and DOES 1 through 10

148. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein. Plaintiffs bring this Count on behalf of the California members of the Class.

149. Plaintiffs and the other Class members who purchased or leased the Subject Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

150. The Subject Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

151. Volkswagen is a "manufacturer" of the Subject Vehicles within the meaning of Cal. Civ. Code § 1791(j).

152. Volkswagen impliedly warranted to Plaintiffs and the other Class members that its Subject Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792, however, the Subject Vehicles do not have the quality that a buyer would reasonably expect.

153. Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(a) Pass without objection in the trade under the contract description.

(b) Are fit for the ordinary purposes for which such goods are used.

(c) Are adequately contained, packaged, and labeled.

(d) Conform to the promises or affirmations of fact made on the container or label.

154.   The Subject Vehicles would not pass without objection in the automotive trade because they do not pass EPA and state law emissions regulations.

155.   Because the "defeat device" falsely causes Subject Vehicles to obtain EPA certification and pass emissions tests when in fact they omit 40 times the permitted level of NOx, they are not safe to drive and thus not fit for ordinary purposes.

156.   The Subject Vehicles are not adequately labeled because the labeling fails to disclose the "defeat device" that causes emissions systems of the Subject Vehicles to become inoperative during normal use.

157.   Volkswagen breached the implied warranty of merchantability by manufacturing and selling Subject Vehicles containing the "defeat device." Volkswagen's fraudulent use of the "defeat device" has caused Plaintiffs and the other Class members to not receive the benefit of their bargain and has caused Subject Vehicles to depreciate in value.

158.   As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiffs and the other Class members received goods whose dangerous and dysfunctional condition substantially impairs their value to Plaintiffs and the other Class members. Plaintiffs and the other Class members have been damaged as a result of the diminished value of Volkswagen's products, the products' malfunctioning, and the nonuse of their Subject Vehicles.

159.   Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Subject Vehicles, or the overpayment or diminution in value of their Subject Vehicles.

160.   Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

## XIX. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class request that the Court enter judgment in their favor and against Volkswagen, as follows:

A. That the case be certified as a Rule 23 class action, including appointment of Plaintiffs' counsel as Class Counsel;

B. An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. Injunctive relief in the form of a recall or free replacement programs;

D. Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

E. Revocation of acceptance;

F. Damages under the Magnuson-Moss Warranty Act;

G. For treble and/or punitive damages as permitted by applicable laws;

H. An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

I. An award of costs and attorneys' fees; and

J. Such other or further relief as may be appropriate.

## XXI. DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial.

DATED: September 21, 2015

Respectfully Submitted,

DONAHOO & ASSOCIATES

By: _____

Richard E. Donahoo
Sarah L. Kokonas
Judith L. Camilleri
Attorneys for Plaintiffs

CLASS ACTION COMPLAINT